DIGITAL EQUIPMENT You know, I have to tell you something. You know, I can't give you the dates, but at one time I had stock in Compact. And I find out Compact took over Digital. Is that right? Yes. Okay. And then it all went to Hewlett-Packard. Right. Huh? That's right. And so I've got shares in Hewlett-Packard. Fourteen hundred. Which I'll be very happy to sell you at half my cost. So I'll tell you that. I don't feel like it's going to make any difference in my thinking. But I just want to put it out. If you have any problem, say so. I appreciate that. I have no problem with it. You don't have to be silent. I have no problem with it. I'm in the same position myself. I don't think it affects what Digital, Compact, or Hewlett-Packard did in this case. Yeah, there's just so many of these marriages taking place, it's hard to keep track of your relatives. Good morning. May it please the Court. My name is Ronald Dean. I'm the attorney for Plaintiff Appellant Hunter and the purported class. I'd like to make two points and then reserve any remaining time I might have. I believe this case hinges on one critical finding of the district court, and that is that I failed to rebut the presumption of a risk of prejudice to the defendant. If that finding was incorrect, not as a discretionary matter, but as a matter of law, that affects two of the five factors found by the district court, one, whether there was prejudice, and two, whether there were lesser sanctions, and I'll explain in a minute. In my motion for summary judgment and in my opposition to the motion to dismiss, I argued that the liability on both of our claims were questions of law. There were no facts to be found. The district court accepted that for the purposes of the motion to dismiss and said, even if they are liable as a matter of law without any facts needing to be found and thus no prejudice resulting from the delay, there still remain four questions relating to damages. These were who went on disability, when they went on disability, how long they were on disability, and when they were terminated. However, because these were raised for the first time by the trial court, we filed a motion for new trial. In it, we pointed out that we had also filed a motion to certify the class. In that motion, we attached the interrogatory answer from the defendants, where we asked how many class members there were in the program, and they said 137, that were terminated within this program. Thus, we know who went on, I'm sorry, class members means people on disability who were then terminated. So we know who went on disability. We know there are 137 people, and the likelihood is that digital knows that because they counted the names of the people. We know when they went on disability, which was before the termination. There were no damages before the termination. The termination caused them to stop accruing pension benefits. And we know when they were terminated, because that's when the pension plan stopped accruing additional benefits for them. This leaves the question of how long they were on disability. Past the time the pension plan stopped accruing pension benefits for them when they were terminated, and that is a record of their sister plan, the long-term disability plan. Now, the long-term disability plan was an insured plan, insured by MetLife. Even if we assume that digital didn't have the records, MetLife certainly would have. And again, maybe I should have anticipated the trial court making this finding and done the discovery to say to MetLife, do you have the records? But the court, again, the district court found this sui sponte. When I asked in deposition digital's expert, I'm sorry, digital's 30B6 expert, Mr. Mulcahy, I asked him if there was anything other than in his declaration that caused the case more difficult to pursue, and he clearly said there was nothing. And there's nothing in his declaration about the plans records, about MetLife not having the records. Again, when I raised, I'm sorry, digital did not raise the issue of there being issues of damages in their motion to dismiss or in their reprieve brief. When I raised that in the motion for new trial, digital's opposition did not suggest that the trial court was correct and that these records were more difficult to find. In this court, in their answering brief, when I raised it in my opening brief, digital did not suggest they would have any trouble identifying these facts, these pieces of information. The second point I'd like to make is that as to plaintiff Hunter herself, we know these facts. Digital admits it knows these facts at their answering brief, page 16. So as to Hunter, there can be no prejudice. These four factors are known to digital as to Hunter and are most certainly known to digital as to the remaining class members. Thank you. Can I ask you a question? Sure. Is your client getting any compensation from the plan? When she reaches normal retirement age, she will receive a pension from the plan, and this case is about the size of that pension. The size of it. Correct. Thank you. And the other people are receiving theirs as well. They will receive pensions when they reach normal retirement age. Some have already retired, certainly. Others have not. I noticed here that the case had been terminated back when it went to the first special master, James Adler. That's right. And what's that all about? That was a surprise to everyone. There was no notice given to the parties. The trial judge, Judge McLaughlin, apparently filed some sort of notice, so there was a clerk's error. No one really knows how that came about. It did cause the defendants in having to file their motion to dismiss to reactivate the case with Judge Stauffer. Well, have you ever seen the document or order that talked about the case being terminated? Never have. Thank you. I think what happened was the case went to the special master, right? By stipulation. That happened, right? Correct. All right. So the sort of clerks or books, because you have to report these cases, it was, for internal purposes, considered terminated. Correct. I forget what the form is that was filed. But you didn't know anything about it? No. Judge McLaughlin kept an active interest in the case, and we filed status reports, which she accepted. And as Mr. Brundage will point out, she became impatient with us with the length of the case, so the dismissal did not affect her activity in the case. She was getting reports from the special master.  Counsel, you renewed your interest after our decision in Burt. Did you alert the court or opposing counsel at any time that you were waiting for a decision in Burt? Were you aware that the Burt decision was pending before this Court? I did not alert anyone, and I was not aware it was pending. So basically, you were just hoping your best chance here was just to hope for a change in the law, and Burt came along and? That's right. My alternative was oppressive. Under the special master's report, I would have had to have presented the testimony of 137 people. The question of what their testimony should be was there were four different positions in the circuit courts at the time, none in the Ninth Circuit, as to what was necessary to prove prejudice. The likelihood of us using the correct standard was de minimis. We would have had to, under the stipulation, we would have again had to try it in the district court. What I should have done, quite honestly, is gone to the district court and said, this is an overburden. I cannot present twice the testimony of 137 people. Give me an advisory ruling on how you would rule on this. She's not entitled to, but maybe I would have gotten lucky. Maybe she would have given me permission for an interlocutory appeal on the issue, but maybe I should have asked even though I knew I wasn't entitled to it. That's the only thing I can think of. Well, you could have sent a simple interrogatory. You did that in some cases, didn't you? Yes. I was sending, we were doing depositions, interrogatories, requests to produce. Discovery went on, but then... These other class members. Right. We had identified them. That's correct. You had identified them, but you could have just sent them interrogatories. Well, we knew this information. Defendant never suggested it didn't know this information. And the trial court, and the fact is the information was in the record. So why was that a burden? I don't understand. What's a burden? Oh, I mean in terms of the question of whether prejudice was required in order for the participant to rely on the summary plan description. They would have had to testify as to whether they read the summary plan description, whether they took action in dependence on it, whether they knew that the terms of the plan were different, what constitutes reliance, what constitute prejudice were all up in the air at the time. So you did a lot of praying and... Yes, we did. You got gold, huh? Well, I got one-tenth of the way there and the trial judge didn't let me get the other. Go the distance. Thank you. All right. Good morning, Your Honors. May it please the Court. My name is Robert Brundage, and I'm with Bingham & McCutcheon, and we represent the digital defendants. And as Judge Pregerson pointed out, in substance, that's now Hewlett-Packard. I have two Hewlett-Packard printers, by the way. I do, too, Your Honor. And Judge Snead's daughter was the CEO of Hewlett-Packard. I didn't know that, Your Honor. Is that Ms. Fiorina? Yes. Yeah, when all of these mergers took place. It's a good thing she's gone. Otherwise, if you showed up there and didn't know that... I would have been in real trouble if Judge Snead had been on the panel. In any event, Your Honor, I won't take too much more time than Mr. Dean did. I will answer what he said about prejudice. But first, I'd like to point out that the plaintiff is here asking the Court to relieve her of self-inflicted injury. The defendants are not the ones who let this case sit for three-and-a-half years. The defendants are not the ones who have... Well, it's not three-and-a-half. It's three-and-a-half months. Well, Your Honor, there was a passage of three-and-a-half years where nothing happened in the district court. I think April of 19... It was a little less than three-and-a-half, but over three. April of 1999, the plaintiff, I think, sent interrogatories to which we responded. And then the next thing that happened was 2002. This Court comes down with Burt. And then the first thing that actually gets filed in the district court after that is our motion to dismiss. Well, there was some... There was email back and forth. ...running around and passing off, and nobody's here, I'll get back to you. That occurred over the course of a couple of months, Your Honor. That was not by any means the main... No, I don't think so, but I'm not... But in any event, it's the plaintiff who has a burden to move this case forward. And counsel forthrightly admitted just now that he didn't deliberately, because he was waiting for a change in the law, because he didn't want, frankly, to prosecute his case under the law that the Special Master had found. Well, Your Honor, that is not an appropriate reason to delay a case. Well, it might have been if he had, as he said, taken steps or had perhaps advised the court of the circumstance. If he had gotten the court's consent to that, Your Honor, perhaps that's true. Presumably, we would then have had a chance to be heard on the subject. But what's the – what is the prejudice? Well, there are several kinds of prejudice, Your Honor. First of all, I should address the standard of review, because with all due respect... Abuse of discretion. ...the opposing counsel misstated. Yes. It's abuse of discretion, and the Eisen case that we cited in our brief states that it's abuse of discretion. I don't think there's a dispute about that. Okay. It's prejudice. Okay. Well, in addition, Your Honor, and I will get – I will answer your question. Actually, I'll answer it now and then go back to what I was going to say. The showing of prejudice, first of all, is the Maltese testimony that almost nobody who made the decisions remains at Digital. You know, there are hundreds of people who were involved in the decisions whether to lay people off. Almost all of those people have separated from the company. He testified that at most two or three people, if he was lucky, who had personal knowledge of the reasons Digital did what it did, would still be around. And the reasons are, in fact, important, or at least the district judge was within her discretion in believing that the reasons were important. You could have gotten the – what do they call them? Human resources person who ran that. I mean, they're involved in laying people off. They – I don't know, as I stand here, Your Honor, whether the human resources person at Digital in 1991 was still with the company in 2002. Chances are pretty high she wasn't or he wasn't. Do we know where that person is? The record – to my knowledge, Your Honor, the record doesn't show one way or the other. But, again, this is – Do we know the person's name? To my knowledge, the record doesn't show the person's name. But this is not our burden, Your Honor. Well, how would they know it? How would they know whether your witnesses are available? Well, they could – You're telling us what you need, and you're saying they're supposed to prove what. How would he know what you need and what's available? Well, for one example, Your Honor, he could send an interrogatory to Digital that says, tell me the name of the person who was the human resources director in 1991. And we answer the interrogatory and we come back and either say it was Joe Smith or we say we don't have the records anymore that says who it was. And then maybe it turns out that Joe Smith has passed away. Maybe it turns out that Joe Smith, nobody knows where he is anymore. The point is, Your Honor, though, that we're not the ones – that the legal framework here is not defendants have to prove prejudice. Even though defendants – yeah, in every case, defendants are generally going to be the ones with the best knowledge of whether they were prejudiced. But the legal framework is that, first of all, the plaintiff has to come forward with a non-frivolous reason for delay. And I haven't heard anything, Your Honor, to contradict the trial judge's finding that the reason here was not reasonable. Everybody admits that it was a strategic delay deliberate for the purpose of hoping that the law would change. There are other factors, even with that in mind, and prejudice is one of them. I'm sorry, Your Honor? Prejudice is one of them and also the idea of a lesser sanction other than dismissal. There is a – as our cases have said, there are two competing policies here. One is disposing cases on the merits and the other is moving cases along. And so we can sort out the burden of proof, but I'm still curious or I still like an answer to my question, if you've given it, that you don't know whether or not there's somebody around who could testify as to the reasons for layoff. Is there any other prejudice? Counsel has gone through and said that all the information that's actually necessary, that the court at least focused on, is indeed available. There are 137 people. The records are available. Well, Your Honor, that's counsel's speculation. Digital did answer an interrogatory that said there were 137 people, but that interrogatory doesn't say what information Digital has about them. And in addition, there are some specific things that, under the law governing plaintiff's claim, might turn out to be very important. The judge pointed out, one, are they covered by the plan? We don't know what information we have about the people covered. But in addition, if you look at the special master's report, the one that's in the record, one of the issues about this particular plaintiff is, did she release her claims? And that issue goes across all of the people who are prospectively in the class. Because the document that they signed when they were terminated contained a release of ERISA claims. It also of ERISA claims, claims under the governing benefits, the federal benefits law. And the plaintiff in particular, Ms. Hunter, sent a- They signed a release of ERISA claims if they're going to be getting a pension through the ERISA plan. Yes, Your Honor. And there was a fight before the special master about the validity and scope of that release. The plaintiff had a unique circumstance because she had written a letter to Digital that said, I understand I'm not waiving any rights under ERISA. And the special master said, well, gee, that creates a triable issue about whether she released her claims. But we don't know, for example, Your Honor- Which special master was it? That was the first one, Mr. Adler. Okay. His report is in the trial court record. However, I don't think it's in the excerpts of record on appeal. See, we don't bring all that stuff. I understand that, Your Honor. That's why I'm mentioning it. We don't carry all that. But that's an example, Your Honor, of this case is not- I'm not following the prejudice. You're telling me a lot of information which says if we go to the record, it's all been litigated. So where is the- what is, as a practical matter- I mean, there's a lot of rhetoric floating around in the briefs. About 11 years this case has been pending. But if you go back and look what has been pending, it's gone through two special masters. You have a judge who died in an unfortunate accident. Judge Stotler comes into the case. I have the highest regard for Judge Stotler. But she's a new judge by definition. So it's not as if she has to get back up to speed. She's coming in to replace Judge McLaughlin. She would have had- any judge coming in would have had to start from ground zero on that basis. So the case management aspect, I think, is very weak in this case. And so I come down to trying to figure out, okay, so what is the real prejudice here? And why does it require the complete dismissal of this case? Yes, there's an admitted strategic decision to await clarification of the law. That weighs very heavily here, no doubt about it. But if at the end of the day it has virtually no practical effect on digital, other than having the use of its money or whatever for 18 months or two years, instead of having to pay it out to the plaintiff or the plaintiff class, I'd sort of like to get a comfortable feel that there's some sense of justice here, besides just saying, well, you know, it's a strategic decision, and that's the end of the game because our cases don't support that. Well, I would disagree with that, Your Honor, and I'll be happy to explain why. But I will- Your Honor is focused on the prejudice, and I will- We have a five-step test, and it doesn't end with frivolous reason. Your Honor, examples of prejudice. On Claim 2, you'll recall there are two outstanding claims. Claim 2 depends on our motive for terminating the given plaintiff. Now, Ms. Hunter says, no, it doesn't, under this Lessard case. Well, the Lessard case doesn't apply here, or at least the district judge would have had a good reason to think it didn't. I can go through that if Your Honor would like.  Our motive as to each class member, we don't have any records. There's no evidence that we have any records as to these 137 or whatever they are. What about as to Ms. Hunter? I'm sorry, Your Honor? What about Ms. Hunter? I don't know, Your Honor, as I stand here. I cannot say to the Court that I have reason to think we don't have records as to Ms. Hunter. I don't know the answer to that. But I can- It wasn't explored in the district court as to whether there was a lesser sanction than complete dismissal. It was, Your Honor. Ms. Hunter suggested 45 days before going to trial on the class. And we said, we can't do that. We haven't had any discovery. That's one lesser sanction. The lesser sanction that counsel has proffered is that at least as to Claim 1 and at least as to Ms. Hunter, there's no prejudice on the face of anything. And therefore, at least her claim as to that claim should be allowed to go forward. But this class, was this class certified? No, Your Honor. It's not. Okay. So it's currently just an individual claim. That's correct, Your Honor. And what's the position of digital as to why you can't defend a Claim 1 based on all that's already in the record and that she was the named plaintiff and that digital, if she had represented by the fine law firm she was, clearly has the complete file on her? Digital, I think digital's position, Your Honor, is that we shouldn't have to go to trial when it's the result of a plaintiff waiting around for a change in the law. As I stand here, I can't articulate any prejudice specific to Ms. Hunter. I can as to the class, but I cannot as to Ms. Hunter on Claim 1. Okay. But as far as the class, it's that, what is it, that 18-month period of delay? Longer than that, Your Honor. April 1999 through, at minimum, June 2002. And really, the first thing that the plaintiff did in the trial court was April 2003. But, you know, if there was a failure to prosecute, of course, the defendant could have come in and filed an OSC as to why the matter ought not to be dismissed for failure to prosecute. That's correct, Your Honor, but it doesn't... And usually it's the court, the clerk of the court. And that didn't happen... The person who goes through these and sits on top of them and sees there's no activity and then will call, at least that's the way it worked with me, would call the counsel and say, I don't see anything happening here. What's going on? And, you know, it went from Judge Letts somehow to Judge McLaughlin. And then it went to the special master. Maybe they use special masters a lot these days. But, listen, when I was out in the district court, you know, it was kind of a rare thing. So it went to the special master and then the judge, for accounting purposes, filed that piece of paper, I'd like to see what it says, and took it off her books. Now, she was getting reports from the master all along, but then she had this tragic situation where she was killed. And after that, Your Honor, there was... Because her calendar probably just showed that it was terminated. And Judge Byrne, who was the chief judge, he then had the duty of figuring out what was going to happen to all her pending cases. And this one, I suppose, no one picked up on it. And the others were probably distributed on the wheel. And lo and behold, this came up again. And people started looking around and said, well, what happened here? And then saw this termination thing. Well, Your Honor, I would submit that that's an example of impairment... Termination without prejudice. I would submit that that's an example of impairment of the court's ability to manage its docket. Because, Your Honor, it's correct, courts do look to see whether... Yeah, but who created that problem? If plaintiff had prosecuted the case, then soon after Judge McLaughlin died, plaintiff would have filed something, and then the court would have... Or a defendant could have filed something. But it's not our burden, Your Honor. The law is very clear that it is the plaintiff's burden to carry the case forward. And, you know, defendants, there's no, first of all, no legal obligation, and second, no practical obligation to file something every time a plaintiff just goes away. Plaintiffs just go away all the time, Your Honor. And that's part of why... I'm sorry. Part of why the court has the system that Your Honor was talking about. I don't know about plaintiffs going away all the time. You know, part of it is, you know, the unfortunate events that happened here. And anyway, it's... Since we're focusing on actual prejudice, I would like to be able to tell the court the case law that I have in mind. I think we're familiar with the case law. But we seem to have a disagreement about how to interpret it, Your Honor, and so I want to make sure that the court focuses on the language that I'm talking about. The Eisen case and the Anderson case both say that the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant. That is a direct quotation from Eisen, Your Honor. And so I would submit, Your Honor, that the plaintiffs... That was four years, wasn't it? Yes, it was, Your Honor. This was a little bit under four years. And so I would like to be able to tell the court the case law that I have in mind.     And so I would submit, Your Honor, that the plaintiffs... No. That is how one counts. I take your point. I understand what you're saying. I am aware of the cases. Okay. And so my point... I've litigated cases for 35 years. I understand, but I'm both... Very well, I understand, Your Honor. You have a very distinguished record. I know that. I hope that I one day have as distinguished a record as Your Honor has. I'm not going overboard. But in any event, Your Honor, so... I can know that. I'm sorry, Your Honor? I can know that. And check back with me in 35 years? Well, in any event, so... Some of my partners used to work with me. They may challenge your character. So examples of prejudice. There's no evidence that we know who was on disability at the time. We don't know whether they exhausted their administrative remedies. The plaintiff here pled that she did, and I believe we admitted that she did. But there's no evidence as to the other members of the class whether they did. That would be a person-specific question that can't be resolved class-wide as an issue of law. In Burt, the Ninth Circuit dropped a footnote that said estoppel remains a valid defense. Well, we don't know, because we don't have the records about the class members, whether there are grounds to argue estoppel as to that. We don't know, Your Honor, whether they released their claims and whether their claims were valid, because as I said earlier, the separation agreement between digital and the people who were terminated contained a release of claims, and the special master found that the plaintiff in particular had a genuine issue as to the validity of her release because of a letter that she specifically wrote. There's no evidence that the other class members wrote similar letters. So my point, Your Honor, is you cannot resolve this case, the district court cannot resolve this case as a matter of law on a class-wide basis. You need the records as to the other members, or at least the district judge was reasonable in so finding. And let me quickly go to overtime. Yes. And I apologize for that, Your Honor. Let me quickly make sure that I have hit the points that I wanted to hit, the actual prejudice, because that seems to be where the Court's main interest lies. The other thing, one other case that I want to call to Your Honor's attention is the Hernandez case that we cite in our brief. It says, While this presumption of prejudice is rebuttable, the plaintiffs have yet to present an excuse for their delay that is anything but frivolous. Accordingly, this factor weighs in favor of dismissal regardless of whether the defendants have shown any actual prejudice. So I repeat, Your Honor, Ninth Circuit case law does support having the prejudice factor point toward dismissal even without the showing of actual prejudice unless the plaintiff comes forward with a non-frivolous reason. The plaintiff here, by all accounts, has not done so. So with that, Your Honor, unless the Court has further questions, I'll sit down. Thank you. I may have 15 seconds. All right. Well, you've got 34 seconds, I think. Inflation. I agree that it's my burden to show there is no risk of prejudice here. And I do it by showing that under both counts it's a question of law. If Lassard doesn't apply to the second cause of action, there are numerous facts that have to be litigated, and that case should be dismissed. The trial court never found whether Lassard decided that in my favor. With regard to the allegations of a host of facts on exhaustion of administrative remedies, the release agreement estoppel, defendants didn't raise that in the trial  court, the trial court didn't find that those created risk of prejudice. The appellant's, the appellee's brief on which Mr. Brundage, whose name appears, does not raise those as issues, these are being raised for the first time today. I don't think that's appropriate. Thank you. Thank you. Appreciate the argument. This matter is submitted. And we'll now take up. Thank you both. Thank you both. The Sey versus Continental Plastics. This is another ERISA case.
judges: Pregerson, Fisher, Bybee